UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDSON FLORES,

                Plaintiff,

v.

TODD L. TRYON, Facility Director, MICHAEL
PHILLIPS, Field Office Director for Detention
and Removal, Buffalo Field Office, Bureau of
Immigration and Customs Enforcement,
Department of Homeland Security, MR. D.
HENDERSON, Supervisory Deportation and
Detention Officer, and Plaintiff's Ex-Deportation
Officer at Buffalo Federal Detention Facility,
MR. D. BALL, Plaintiff's Deportation Officer at
Buffalo Federal Detention Facility, and SCOTT
SCHRADER, Supervisory of Deportation and
Detention Officer at Buffalo Federal Detention
Facility,

                Defendants.
_____

**DECISION AND ORDER**

6:15-cv-06623-EAW



## **BACKGROUND**

On October 16, 2015, Plaintiff Edson Flores ("Plaintiff"), an alien subject to various immigration proceedings before the Department of Homeland Security ("DHS"),[1] commenced this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), claiming that he has been unlawfully detained in violation of 8 C.F.R. § 287.7, as well as his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (Dkt. 1). Each of Plaintiff's claims is based upon the duration of his

---

[1] Plaintiff's final order of removal was vacated by the Second Circuit on February 26, 2015. *Flores v. Holder*, 779 F.3d 159 (2d Cir. 2015).

- 1 -

detention to the present day. (*See* Dkt. 1 at 5). Plaintiff alleges that he has complained of this allegedly illicit detention to defendants Todd L. Tryon, Michael Phillips, D. Henderson, and D. Ball (collectively, "Defendants")[2] on various occasions, but these complaints were either denied or simply ignored. (Dkt. 1 at 6-8).

Presently pending before the Court is Defendants' motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 11). Defendants have also submitted evidence outside of the complaint, and have requested that this Court consider their application as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. 15 at 2). Plaintiff has not filed a response to Defendants' motion. For the following reasons, Defendants' motion to dismiss is granted, and Plaintiff's complaint is dismissed without prejudice.

---

[2] Plaintiff's only allegation against defendant Scott Schrader ("Schrader") is that he is a "[s]upervisory deportation and detention officer" and, "[a]s such[,] he is responsible for [Plaintiff's] detention." (Dkt. 1 at 8). "[I]n order to be subject to liability under *Bivens*, a federal official must have been personally involved in the alleged constitutional violation; simply being in a supervisory position is not sufficient." *Ramos v. Winiewicz*, No. 12-CV-0157M, 2012 WL 1044530, at *5 (W.D.N.Y. Mar. 23, 2012); *see Adekoya v. Holder*, 751 F. Supp. 2d 688, 694 (S.D.N.Y. 2010) ("To state a claim under *Bivens*, a plaintiff must allege that an individual defendant personally committed a specific wrongful act that violated a well-established constitutional right of which a reasonable person would have known."). As Plaintiff has not provided any allegations relating to Schrader's personal involvement in any claimed constitutional violation, the complaint is dismissed as against Schrader, without prejudice. *Young v. Tryon*, No. 12-CV-6251 (CJS), 2015 WL 309431, at *13 (W.D.N.Y. Jan. 23, 2015), *report and recommendation adopted*, No. 12-CV-6251 (CJS) (MWP), 2015 WL 554807 (W.D.N.Y. Feb. 11, 2015).

# PROCEDURAL HISTORY[3]

Plaintiff, a native and citizen of Honduras, entered the United States without being admitted or inspected by an immigration officer. *Flores v. Holder*, 977 F. Supp. 2d 243, 244 (W.D.N.Y. 2013). On two separate occasions—on or about December 22, 2008, and on or about January 29, 2009—Plaintiff was convicted of two counts of Sexual Abuse in the First Degree in New York State Supreme Court and was sentenced to 42 months of incarceration both times. *See id.* Plaintiff was released into the custody of DHS on June 10, 2011. *Id.*

On April 9, 2009, while still incarcerated, Plaintiff was served with a Notice to Appear, charging him with being subject to removal "as an alien present in the United States without being admitted or paroled" pursuant to § 212(a)(6)(A)(I) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1182(a)(6)(A)(I); *see Flores*, 977 F. Supp. 2d at 244. On July 21, 2011, Plaintiff was served with additional charges "as an alien convicted of a crime of moral turpitude." *Id.*; *see* 8 U.S.C. § 1182(a)(2)(A)(iii). Plaintiff successfully sought several continuances in the disposition of his immigration matter before eventually conceding that he was subject to removal for entering the United States without inspection. *Flores v. Holder*, 779 F.3d 159, 162 (2d Cir. 2015). However,

---

[3] Among "the narrow universe of materials" that a court may consider when faced with a motion to dismiss for failure to state a claim, are "matters of which the court may take judicial notice." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quotations omitted). A court may take judicial notice of records in prior related proceedings. *Jackson v. New York State*, 523 F. App'x 67, 68 (2d Cir. 2013); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003); *Simpson v. Putnam Cty. Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 634 n.4 (S.D.N.Y. 1998); *see* Fed. R. Evid. 201. As such, the following procedural facts are taken from Plaintiff's previous legal matters held before this Court and the Second Circuit.

he sought an additional continuance to adjust his citizenship status, and also applied for asylum "based on his fear of gangs in Honduras." *Id.* at 162-63. The Immigration Judge ("IJ") denied Plaintiff's requests and addressed the merits of Plaintiff's removal action. *Id.* at 163. On January 6, 2012, the IJ issued an order of removal ("Removal Order"), requiring that Plaintiff be removed to Honduras. *Flores*, 977 F. Supp. 2d at 244. On May 22, 2012, the Board of Immigration Appeals ("BIA") dismissed Plaintiff's administrative appeal of the Removal Order, causing the Removal Order to become the final decision of DHS. *Id.* On June 15, 2012, Plaintiff filed a petition to the Second Circuit for review of the BIA's decision ("Review Petition"), along with a request for a stay of the Removal Order. *Id.* at 245.

On February 6, 2013, Plaintiff filed a petition for a writ of habeas corpus on the ground that his continued detention exceeded the presumptively reasonable six-month period established for due process concerns in deportation proceedings. *Id.*; *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). On February 28, 2013, the Second Circuit granted Plaintiff's motion to stay the Removal Order pending the resolution of the Review Petition. *Flores*, 977 F. Supp. 2d at 245.

On June 7, 2013, this Court denied Plaintiff's petition for a writ of habeas corpus, finding that Plaintiff's detention had been prolonged by his "own pursuit of judicial review of the final order of removal," and that Plaintiff failed to "set[] forth [any] factual basis to substantiate [his] belief that there is no significant likelihood he can be removed to Honduras in the reasonably foreseeable future." *Id.* at 248-49.

On October 1, 2013, Plaintiff filed a second petition for a writ of habeas corpus, alleging that his continued detention was unconstitutional, and that he had been unlawfully detained by the New York State Department of Corrections and Community Supervision ("DOCCS") "for four days before he was taken into DHS custody and that DHS failed to immediately take him into custody upon completion of his state sentence in accordance with the applicable law and regulations." *Flores v. Tryon*, No. 13-CV-987-JTC, 2014 WL 2002830, at *3 (W.D.N.Y. May 15, 2014). The Court denied Plaintiff's second petition—stating that "[n]othing has changed since [Plaintiff] filed his initial petition for habeas relief in June 2013"—on virtually the same grounds as the first petition. *Id.* at *5-7.

On February 26, 2015, the Second Circuit issued a decision granting Plaintiff's Review Petition in part and denying it in part. *Flores*, 779 F.3d at 167. Specifically, the Second Circuit determined that the BIA, in applying the incorrect legal standard, abused its discretion in denying Plaintiff's motion for a continuance. *Id.* at 164-65. In addition, while the Second Circuit held that the BIA did not err in finding that Plaintiff was ineligible for asylum because his New York State criminal convictions constituted "particularly serious crimes," *id.* at 167; *see* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii), it also determined that the BIA incorrectly evaluated these convictions as "aggravated felonies." *Flores*, 779 F.3d at 165-66; *see* 8 U.S.C. § 1101(a)(43)(A); *see also* 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i). Moreover, the Second Circuit declined to find this error to be harmless "in light of the potential impact of an aggravated felony determination on the availability of future relief and the exercise of discretion." *Flores*,

779 F.3d at 167. The Second Circuit then vacated the BIA's decision and remanded the matter for further administrative proceedings. *Id.*

On October 16, 2015, Plaintiff filed the instant action against Defendants seeking monetary compensation pursuant to *Bivens* for various alleged constitutional violations. Plaintiff asserts that DHS failed to comply with the temporal requirements of 8 C.F.R. § 287.7(d) when he was initially detained, and that his continued detention has violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. (Dkt. 1 at 5). On December 14, 2016, Defendants moved to dismiss the complaint (Dkt. 11), and Plaintiff did not file a response. For the following reasons, Defendants' motion to dismiss is granted, and Plaintiff's complaint is dismissed without prejudice.

## DISCUSSION

### I. Legal Standard

A court should consider a motion to dismiss for the failure to state a claim by "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'"). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

II. <u>Asserting a Claim Under *Bivens*</u>[4]

In *Bivens*, the Supreme Court found a private right of action for monetary damages for the violation of one's constitutional rights by a federal agent acting under color of federal authority.[5] *Bivens*, 403 U.S. at 389; *see, e.g., Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009). "The purpose of the *Bivens* remedy 'is to deter individual federal officers from committing constitutional violations.'" *Arar*, 585 F.3d at 571 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001)).

---

[4] "Although the Second Circuit has not directly addressed this subject, this Court notes that several other Circuits have found that *Bivens* does not apply in similar factual contexts." *Reva v. Ymer*, No. 15-CV-124S, 2016 WL 5782279, at *3 n.4 (W.D.N.Y. Oct. 4, 2016); *see Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1208 (11th Cir. 2016) ("We too hold that a plaintiff cannot recover damages under *Bivens* for constitutional violations that caused him to endure a prolonged immigration detention."), *cert. denied sub nom. Alvarez v. Skinner*, No. 16-879, 2017 WL 2722436 (June 26, 2017); *De La Paz v. Coy*, 786 F.3d 367, 380 (5th Cir. 2015) (holding that the plaintiffs could not "pursue *Bivens* suits against the agents for allegedly illegal conduct during investigation, detention, and removal proceedings"), *cert. denied sub nom. Garcia de la Paz v. Coy*, No. 15-888, 2017 WL 2722429 (June 26, 2017); *Mirmehdi v. United States*, 689 F.3d 975, 983 (9th Cir. 2012) ("[W]e decline to extend *Bivens* to allow the [plaintiffs] to sue federal agents for wrongful detention pending deportation given the extensive remedial procedures available to and invoked by them and the unique foreign policy considerations implicated in the immigration context."). However, the Court need not opine upon whether the application of *Bivens* is appropriate in the present matter as Defendants have failed to argue this position in their motion papers, and it is not this Court's responsibility to raise and make counsel's arguments for them. *Murray v. Coleman*, No. 08-CV-6383L, 2014 WL 2993748, at *7 (W.D.N.Y. July 2, 2014).

[5] Since "[t]he Fourteenth Amendment applies to state action and not federal action," inasmuch as Plaintiff alleges that Defendants acted under color of federal authority, Plaintiff's Fourteenth Amendment claim must be dismissed. *Russo v. Glasser*, 279 F. Supp. 2d 136, 142 (D. Conn. 2003); *see, e.g., Taylor v. Dunlap*, No. 07-CV-253 (NAM) (DRH), 2009 WL 666441, at *2 n.1 (N.D.N.Y. Mar. 11, 2009) ("Any due process claim would necessarily be a Fifth Amendment claim; the Fourteenth Amendment applies only to the states, not to federal defendants.").

"[A] plaintiff in a *Bivens* action is required to allege facts indicating that the defendants were personally involved in the claimed constitutional violation." *Id.* at 569. The doctrine of *respondeat superior* does not apply in *Bivens* actions, and so a supervisory defendant is only subject to a *Bivens* claim if he: "(1) directly participated in the constitutional violation;[6] (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring." *Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006). The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) involved *Bivens* claims against supervisory officials. *Id.* at 676. There, the Court made it clear that conclusory allegations are insufficient to render a claim against a supervisory official plausible. *Id.* at 680-81.

---

[6] A *Bivens* cause of action must be alleged against a federal agent acting in his or her "personal capacity," and any claim arising from a federal agent's conduct while acting in their "official capacity" "must fail." *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 272 (E.D.N.Y. 2014). Plaintiff states that he brings this *Bivens* action against Defendants "as an [sic] official capacity." (Dkt. 1 at 1, 5). Nonetheless, Plaintiff also makes various assertions against Defendants individually in an attempt to allege their personal involvement. (*Id.* at 6-8). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted) (emphasis in original). Thus, notwithstanding Plaintiff's incorrect denomination of his claims, the Court construes the allegations in the complaint as attempting to set forth a *Bivens* action against Defendants in their *personal capacities*.

## A. Statute of Limitations

"*Bivens* actions brought in New York federal courts are subject to a three-year statute of limitations." *Reva v. Ymer*, No. 15-CV-124S, 2016 WL 5782279, at *4 (W.D.N.Y. Oct. 4, 2016). "A *Bivens* claim accrues under federal law for statute of limitations purposes when a plaintiff either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).

Plaintiff claims that his constitutional rights were violated "when he was taken into custody and detained . . . at Buffalo Federal Detention Facility [(the "Facility")] after the exceeding [sic] of the 48 hours mandated under the [f]ederal [r]egulations." (Dkt. 1 at 6). Specifically, Plaintiff alleges that he was held by "DOCCS"—from June 6, 2011, to June 10, 2011—for over 48 hours before DHS assumed custodial responsibility over him. (*Id.*). The pertinent regulation provides that once DHS has "issue[d] a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the [DHS]." 8 C.F.R. § 287.7(d).

The alleged violation of this regulation is the main and, indeed, the sole underlying factual predicate for this action. Plaintiff's claims against Defendants all relate to his assertion that Defendants either ignored or denied his complaints of an unlawful detention stemming from this alleged violation. (Dkt. 1 at 6-8). The Court agrees with Defendants that Plaintiff's third cause of action, alleging a violation of 8

C.F.R. § 287.7, is barred by the three-year statute of limitations because that claim would have accrued, if at all, on June 10, 2011, at the time the DHS assumed custody of Plaintiff. *See Reva*, 2016 WL 5782279, at *4 ("[The plaintiff's] constitutional claims against Officer Ymer occurred, if at all, more than three years prior to the filing of the instant complaint."). As such, Plaintiff's third cause of action is dismissed with prejudice.

### B. Personal Involvement of Defendants

Furthermore, the Court is unable to conclude, based on the allegations in Plaintiff's complaint, that a *Bivens* remedy is available to Plaintiff even if Defendants ignored or denied his complaints regarding this allegedly unlawful detention. Defendants argue that Plaintiff has not alleged any personal involvement on their part relating to any delay that may have occurred while securing Plaintiff in DHS custody. (Dkt. 15 at 9-10). The Court agrees with this position, and reads the complaint as alleging only that Defendants merely ignored or denied Plaintiff's *subsequent* requests for relief. (Dkt. 1 at 6-8).

*Bivens* applies only where a constitutional violation has been alleged. Although the complaint does not specify the method by which Plaintiff's complaints were asserted, it is well-established that "a prison official's refusal to process an inmate's grievance does not give rise to a claim under *Bivens*." *Young v. Tryon*, No. 12-CV-6251 (CJS), 2015 WL 309431, at *14 (W.D.N.Y. Jan. 23, 2015), *report and recommendation adopted*, No. 12-CV-6251 (CJS) (MWP), 2015 WL 554807 (W.D.N.Y. Feb. 11, 2015); *Cipriani v. Schenectady Cty.*, No. 06-CV-0889(GTS) (DRH), 2009 WL 3111681, at *22

(N.D.N.Y. Sept. 24, 2009) ("[P]rison inmates have no constitutional right of access to a grievance process."); *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution. . . ."); *see Higgins v. Artuz*, No. 94 Civ 4810 (SS), 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, D.J.) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (quotation omitted)). Plaintiff's allegations that on some unidentified occasions, through some unknown process, Defendants ignored or denied his suggestions that he was being unlawfully detained constitute the precise type of conclusory allegations subject to dismissal under Rule 12(b)(6). *See Jean-Laurent v. Lane*, No. 11-CV-186 (NAM) (TWD), 2013 WL 600213, at *16 (N.D.N.Y. Jan. 24, 2013) ("The naked assertion in [the p]laintiff's [c]omplaint that he complained to [the d]efendants Barkley, Hulihan, and Lindquist that he was being deprived of reasonable and adequate dental care, and that his complaints were found unsubstantiated is simply too lacking in factual detail to show that [the p]laintiff is entitled to relief."), *report and recommendation adopted*, No. 11-CV-186 (NAM) (TWD), 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013).

However, Plaintiff does allege that defendant Todd L. Tryon ("Tryon") denied his formal request for release from the Facility. (Dkt. 1 at 6-7). Plaintiff attached Tryon's response as Exhibit E to his complaint, and it shows that Tryon informed Plaintiff that his petition for a writ of habeas corpus had just been denied, "indicating that we are holding you correctly and we do not have an illegal detention." (*Id.* at 18). "[W]hile there is

some authority from within this [C]ircuit that a supervisory official's denial of a grievance can suffice to show personal involvement, in general personal involvement will not be found unless the supervisor's response is detailed and specific." *Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006) (quotations and citation omitted). Should this principle be casually discounted, "senior administrative officials could generally be named as defendants in prison condition cases." *McClenton v. Menifee*, No. 05 Civ 2844 (JGK), 2006 WL 2474872, at *10 (S.D.N.Y. Aug. 22, 2006). It is for this reason that the nature of the prison official's response should be analyzed to determine whether it amounts to a mere summary denial, or whether it specifically addresses a plaintiff's complaint. *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010). A simple *pro forma* denial of a grievance does not demonstrate the requisite degree of personal involvement. *See Rosario v. Fischer*, No. 11 Civ 4617 (JPO) (FM), 2012 WL 4044901, at *5 (S.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, No. 11 Civ 4617 (JPO), 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012); *Mateo*, 682 F. Supp. 2d at 431.

Here, Plaintiff's allegations do not indicate that Tryon's brief and cursory reply to Plaintiff's requested relief was anything more than a *pro forma* response. Indeed, Tryon's response does not even mention 8 C.F.R. § 287.7, which was specifically asserted in Plaintiff's request as the ground upon which his detention should be deemed unlawful. (Dkt. 1 at 18); *see Watson v. Wright*, No. 08-CV-00960 (A) (M), 2013 WL 1791079, at *9 (W.D.N.Y. Mar. 26, 2013) (concluding that the superintendent's assurance "that [the] plaintiff was being properly treated, without any explanation of the

treatment he was receiving or the complaints at issue, [wa]s insufficient to establish" personal involvement), *report and recommendation adopted*, No. 08-CV-960 (A), 2013 WL 1789578 (W.D.N.Y. Apr. 26, 2013); *Mateo*, 682 F. Supp. 2d at 431 ("[The plaintiff's] complaint claims only that [the defendant] received his letters, forwarded at least two of them to subordinates for investigation, and sent [the plaintiff] a response to the effect that [the plaintiff] had provided insufficient information to support his allegations."); *see also Keitt v. Schun*, No. 11-CV-438, 2014 WL 347053, at *7 (W.D.N.Y. Jan. 30, 2014) (stating that the nurse administrator's reply that the plaintiff was "'scheduled to see a medical clinician to assess [his] medical concerns'" was a "generalized response" to the plaintiff's complaint of intentional interference with pain medicine); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 649 (W.D.N.Y. 2010) (holding that the plaintiff failed to state a constitutional claim against the prison official who, after investigating the plaintiff's grievance, "concluded that [the] plaintiff had not been retaliated against by other officers").

Therefore, the Court finds that Plaintiff's complaint fails to state sufficient allegations of personal involvement against Defendants, and as such, Plaintiff's first, second, and fourth causes of action are dismissed without prejudice. Since "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Satchell*, 745 F.2d at 785; *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quotations omitted)),

Plaintiff is granted leave to file an amended complaint within **thirty (30) days of the filing of this Decision and Order**.

### III. Defendants' Request For Summary Judgment is Denied

Defendants also argue that this Court should treat their motion as one requesting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. 15 at 2). However, "when a court converts a motion to dismiss to a motion for summary judgment, . . . [the court must] 'give sufficient notice to an opposing party and an opportunity for that party to respond.'" *Savage v. OFC. Michael Acquino*, No. 13-CV-6376, 2016 WL 5793422, at *8 (W.D.N.Y. Sept. 30, 2016) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009)). "In the case of a *pro se* party, . . . notice is particularly important because the *pro se* litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Id.* (quotations omitted). "[T]he failure to provide the *pro se* party with notice of the requirements of Rule 56 of the Federal Rules of Civil Procedure, and the consequences of noncompliance therewith, will result in vacatur of the summary judgment, no matter how meritorious, unless the movant shows (or it is obvious to the court) that the *pro se* was aware of this rule's requirements." *Irby v. New York City Transit Auth.*, 262 F.3d 412, 413 (2d Cir. 2001). "Since *Irby*, this district has implemented mandatory summary judgment notice requirements, adopted in our Local Rules of Civil Procedure." *Savage*, 2016 WL 5793422, at *8; *see* L. R. Civ. P. 56(b).

Here, although Defendants filed a Rule 56 statement of facts (Dkt. 12), there is no indication in the record that Plaintiff understood the consequences of failing to submit

opposing evidentiary materials or to otherwise adequately respond to a motion for summary judgment. *Hernandez*, 582 F.3d at 308-09 ("So far as appears in the record, neither the district court, nor the defendants, ever explained to Hernández the nature or consequences of summary judgment. There is also nothing in the record to suggest that Hernández independently understood the summary judgment process."); *Savage*, 2016 WL 5793422, at *9 ("A review of [the] plaintiff's response in opposition establishes that he did not fully understand the challenges raised in [the defendant's] motion to dismiss, let alone that the motion might be converted into one for summary judgment."). Indeed, Plaintiff did not even submit a response to Defendants' motion. As such, the Court declines Defendants' invitation to consider their motion as one made pursuant to Rule 56 of the federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 11) is granted, Plaintiff's complaint (Dkt. 1) is dismissed, and the Clerk of Court is directed to close this case. Plaintiff's third and fifth causes of action are dismissed with prejudice, but the remaining causes of action are dismissed without prejudice. Plaintiff is granted leave to file an amended complaint as to the first, second, and fourth causes of action **within thirty (30) days of the filing of this Decision and Order**. If Plaintiff does not file an amended complaint as directed, his Fourth, Fifth, and Eighth Amendment claims will be dismissed with prejudice. Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir.

1977); *see, e.g., Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's amended complaint must include all necessary allegations so that it may stand alone as the sole complaint in this action. Moreover, Plaintiff is reminded that leave to amend is only granted with respect to the Fourth, Fifth, and Eighth Amendment causes of action, consistent with this Decision and Order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

DATED: August 28, 2017
Rochester, New York